Matter of Colby R. (David Q.) (2021 NY Slip Op 06404)





Matter of Colby R. (David Q.)


2021 NY Slip Op 06404


Decided on November 18, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:November 18, 2021

530799
[*1]In the Matter of Colby R., Alleged to be a Permanently Neglected Child. Schoharie County Department of Social Services, Petitioner; David Q., Appellant.

Calendar Date:September 13, 2021

Before:Egan Jr., J.P., Lynch, Clark, Pritzker and Colangelo, JJ.

Veronica Reed, Schenectady, for appellant.
Teresa A. Meade, Middleburgh, attorney for the child.
Christine E. Nicolella, Delanson, for Kristen R.



Egan Jr., J.P.
Appeal from an order of the Family Court of Schoharie County (Bartlett III, J.), entered December 10, 2019, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be permanently neglected.
The subject child was born in August 2017 and, a month later, petitioner commenced a neglect petition against the mother and temporarily obtained care and custody of the child. Respondent, a resident of Kentucky, learned during the pendency of that neglect proceeding that he might be the child's father, and his parentage was established in a separate proceeding in 2018.[FN1] The neglect proceeding culminated in an order — reflecting the results of a February 2018 appearance but drafted much later and entered in November 2018 — that, upon consent, adjudicated the mother as having neglected the child and continued the child's placement in foster care. Throughout 2018, the goal remained to return the child to his parents, and Family Court directed that petitioner make reasonable efforts to meet that goal by, among other things, affording respondent telephonic access to the child. Petitioner further requested that Kentucky officials assess respondent's suitability as a placement pursuant to the Interstate Compact on the Placement of Children (see Social Services Law § 374-a [hereinafter ICPC]).
Respondent subsequently failed to either visit the child or take advantage of numerous opportunities to communicate via video chat and, in March 2019, Kentucky officials completed their ICPC investigation and declined to approve the child's placement with him. Petitioner thereafter filed a July 2019 petition to terminate respondent's parental rights on the ground of permanent neglect and free the child for adoption by his foster parents (see Family Ct Act § 1035 [d] [iii]; Social Services Law § 384-b [7] [a]). Following a fact-finding hearing at which the mother expressed her support for freeing the child for adoption, Family Court issued an order determining that respondent had permanently neglected the child. Family Court then conducted a dispositional hearing and issued a decision finding that it was in the best interests of the child to terminate respondent's parental rights. Respondent, who represents that a dispositional order has still not been filed to effectuate the terms of the latter decision, appeals from the fact-finding order.[FN2]
To begin, respondent raises various arguments regarding procedural missteps in the neglect proceeding against the mother, such as petitioner's failure to give him initial notice of that proceeding as required by Family Ct Act § 1035 (d) or to seek, upon the removal of the child from the mother's care, to "immediately locate and investigate any non-respondent parent . . . and inform [that parent] of the pendency of the proceeding and the opportunity to seek custody of the child" (Matter of Timothy GG. [Meriah GG.], 163 AD3d 1065, 1068 [2018], lvs denied [*2]32 NY3d 908 [2018], quoting Family Ct Act § 1017 [1] [a]). Respondent further complains of deficiencies in the permanency hearing orders issued following the adjudication of neglect against the mother. That said, although respondent had not yet been identified as the child's father when the neglect proceeding against the mother was commenced, he learned of it soon after and availed himself of the opportunity to intervene in it. Despite thereafter participating in that proceeding, there is no indication that he appealed from either the order adjudicating the mother to have neglected the child or from the permanency hearing orders. Accordingly, as the appeal now before us is from the order of fact-finding in the permanent neglect proceeding, which did not revisit the terms of any order issued in the prior neglect proceeding against the mother, any challenge to the terms of those prior orders is not properly before us (see Matter of Jahvani Z. [Thomas V.—Mariah Z.], 168 AD3d 1146, 1148 [2019], lv denied 33 NY3d 902 [2019]; Matter of Stephen N. [William O.], 105 AD3d 1109, 1109 [2013]; compare Matter of Damian D. [Patricia WW.], 126 AD3d 12, 16-17 [2015]).
Turning to issues that are properly before us, "[a]s relevant here, a permanently neglected child is one who is in the care of an authorized agency and whose parent has failed, for at least one year after the child came into the agency's care, to substantially and continuously or repeatedly 'plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship'" (Matter of Jason O. [Stephanie O.], 188 AD3d 1463, 1464 [2020], lv denied 36 NY3d 908 [2021], quoting Social Services Law § 384-b [7] [a]; see Matter of Brielle UU. [Brandon UU.], 167 AD3d 1169, 1170 [2018]). Petitioner must "first establish, by clear and convincing evidence, that it has made diligent efforts to encourage and strengthen the parent's relationship with the child[]" (Matter of Arianna K. [Maximus L.], 184 AD3d 967, 968 [2020] [internal quotation marks and citations omitted]; accord Matter of Chloe B. [Sareena B.], 189 AD3d 2011, 2012 [2020]; see Social Services Law § 384—b [7] [a], [f]; Matter of Jason O. [Stephanie O.], 188 AD3d at 1464), meaning "practical and reasonable efforts to ameliorate the problems preventing reunification and strengthen the family relationship by such means as assisting the parent with visitation, providing information on the child's progress and development, and offering counseling and other appropriate educational and therapeutic programs and services" (Matter of Isabella H. [Richard I.], 174 AD3d 977, 978 [2019] [internal quotation marks, brackets and citations omitted]; see Matter of Jason O. [Stephanie O.], 188 AD3d at 1464-1465).
The record reveals that, after respondent came forward and claimed to be the child's father, petitioner's caseworker included him in service plan [*3]reviews, arranged for him to engage in scheduled video visits with the child and sent him photographs of and updates about the child. In view of the barriers to placement posed by respondent's stated reluctance to follow through on treatment for his mental health diagnoses, his tumultuous relationships with the mother and other significant others, as well as his interactions with the criminal justice system, the caseworker also required him to comply with recommended mental health treatment, take an in-person parent education class and authorize her to speak to the provider of a domestic violence class that he had previously completed. Further, the caseworker testified that she stressed the need for respondent to keep her apprised of changes in his contact information and warned him of the potential consequences should he fail to regularly participate in video visits with the child. As such, clear and convincing evidence in the record supports Family Court's determination that petitioner made diligent efforts to encourage respondent to develop a relationship with the child and remove the barriers that could prevent that development (see Matter of Jase M. [Holly N.], 190 AD3d 1238, 1240-1241 [2021], lvs denied 37 NY3d 901 [2021]; Matter of Jason O. [Stephanie O.], 188 AD3d at 1466; Matter of Arianna K. [Maximus L.], 184 AD3d at 969).
The record also contains clear and convincing evidence for Family Court's determination that, notwithstanding petitioner's diligent efforts, respondent had "failed to substantially plan for the future of the child for the requisite period of time" (Matter of Jason O. [Stephanie O.], 188 AD3d at 1466; see Matter of Alexander Z. [Jimmy Z.], 149 AD3d 1177, 1179 [2017]). In that regard, respondent had never seen the child in person, showed little initiative to do so despite two efforts to facilitate his travel to New York, and had only taken advantage of one of the approximately 20 scheduled video visits that he had been offered with the child. Respondent expressed only sporadic interest in caring for the child prior to the commencement of this proceeding, in fact indicating at various points that he was willing to surrender his parental rights and that he felt that the child should be adopted or cared for by others. Family Court further credited proof that respondent had not made progress in ensuring that he would receive treatment for the severe mental illness that left him unable to live independently or care for a child, noting his statements to petitioner's caseworker and others that he did not take his prescribed psychotropic medications and that he had "played" a mental health court program he participated in after pleading guilty to assaulting a girlfriend in 2016. Thus, deferring to the credibility determinations of Family Court, we agree that respondent permanently neglected the child (see Matter of Jacelyn TT. [Carlton TT.], 91 AD3d 1059, 1060-1061 [2012]; Matter of Neal TT. [Deborah UU.], 97 AD3d 869, [*4]871 [2012]; Matter of Tailer Q. [Melody Q.], 86 AD3d 673, 674-675 [2011]).
Respondent's remaining contentions, to the extent that they are properly before us, have been examined and found to lack merit.
Lynch, Clark, Pritzker and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Respondent filed an acknowledgment of paternity in connection with a December 2017 petition for custody of the child, but later withdrew both. Respondent proceeded to file additional petitions seeking custody of and/or visitation with the child, and he separately appeals from orders dismissing two of those petitions (Matter of David Q. v Schoharie County Dept. of Social Servs., AD3d [decided herewith]).

Footnote 2: There is no appeal as of right from a fact-finding order in a permanent neglect proceeding (see Matter of Ronaldo D. [Jose C.], 177 AD3d 1217, 1218 n 2 [2019], lv denied 35 NY3d 906 [2020]; Matter of Keadden W. [Hope Y.], 165 AD3d 1506, 1507 [2018], lv denied 32 NY3d 914 [2019]). Under the circumstances here, however, we elect to treat respondent's notice of appeal from the fact-finding order as an application for leave to appeal and grant that application (see Matter of Ronaldo D. [Jose C.], 177 AD3d at 1218 n 2; Matter of Derick L. [Michael L.], 166 AD3d 1325, 1326 [2018], lv denied 32 NY3d 915 [2019]; see also Family Ct Act § 1112 [a]).